IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CENTRAL BANK OF THE MIDWEST,

    Plaintiff,

v.                                                   Case No.  22-2218-JWB

NUETERRA CAPITAL, LLC,

    Defendant.

**MEMORANDUM AND ORDER**

This matter comes before the court on Central Bank of the Midwest's ("Central Bank") motion for summary judgment. (Doc. 18.) The matter is fully briefed and ready for decision. (Docs. 19, 26, 38.) While this motion for summary judgment was pending, defendant and third-party plaintiff Nueterra Capital, LLC ("Nueterra") filed a motion for default judgment against third-party defendant Platinum Medical Management, Inc. ("Platinum").[1] (Doc. 48.) For the reasons stated herein, Central Bank's motion for summary judgment (Doc. 18) is GRANTED and Nueterra's motion for default judgment (Doc. 48) is DENIED.

I. **Facts and Procedural Background**

    A. **Facts Relevant to Summary Judgment**

The following statement of facts is taken from the parties' submissions.[2] Factual disputes about immaterial matters are not relevant to the determination before the court. Therefore, immaterial facts and factual averments that are not supported by record citations are omitted.

---

[1] Platinum has not entered an appearance, nor has it answered the third-party complaint or responded to the motion for default judgment.

[2] The crux of the parties' dispute on summary judgment was the existence of certain facts. Central Bank contended certain facts were true (Doc. 19 at 2–4), and Nueterra contended that some discovery was necessary before it could either confirm or controvert those facts (Doc. 26 at 2–3). At the time that Nueterra filed its response to Central Bank's

On March 10, 2021, Central Bank and Noble Health Audrain Inc. and Noble Health Real Estate II LLC ("Borrowers")[3] entered into a loan agreement and note. (Doc. 19 at ¶ 1.) On that same date, Nueterra executed a guaranty in connection with the loan to induce Central Bank to loan the money to Borrowers. (*Id.* at ¶ 2; Doc. 1-3.) The loan was in the amount of $9,600,000.00 and would fund the purchase of a rural hospital and related assets. (Doc. 20 at ¶ 4; Doc. 26 at 1–2.) Nueterra's Chief Executive Officer Jeremy Tasset executed the guaranty on behalf of Nueterra. (Doc. 19 at ¶ 3.)

The guaranty states that "[Nueterra's] execution and delivery of this Guaranty is a principal part of the consideration of [Central Bank's] making the Loan to Borrower, and [Central Bank] is not willing to make the Loan unless this Guaranty is executed and delivered." (Doc. 1-3 at 2.) In executing the guaranty, Nueterra had to acknowledge and agree that the loan to Borrowers constituted adequate consideration in exchange for the execution and delivery of the guaranty. (*Id.*) In the guaranty, Nueterra "hereby unconditionally and irrevocably guarantee[d] (i) the prompt payment of all sums which may become payable by Borrower under the Loan Documents, in full and when due in accordance with the provisions thereof, and (ii) any and all other obligations of Borrower under the Loan Documents." (*Id.*) The guaranty states that it is "irrevocable, unconditional and absolute." (*Id.*)

After the guaranty and loan documents were executed, Central Bank loaned the $9,600,000.00 to Borrowers. (Doc. 19 at ¶ 9.) Borrowers then defaulted. (*Id.* at ¶ 10.) On April 18, 2022, Central Bank delivered a Notice of Default, Acceleration and Demand for Payment to

---

motion for summary judgment, Nueterra also served discovery requests upon Central Bank. (Doc. 25.) Those discovery requests have now been answered, and Central Bank explains in its reply that it has provided to Nueterra the documents that show it is entitled to summary judgment. (Doc. 38 at 2.) Central Bank also attached some of the requested documents as exhibits to its reply. (*See* Docs. 38-1, 38-2, 38-3, 38-4.) These documents support Central Bank's facts and establish that there is no genuine dispute of material fact.
[3] Borrowers are not parties in this action.

Nueterra.[4]  (*Id.* at ¶ 11.)  As of August 22, 2022, Central Bank's records showed an outstanding amount of "$7,631,942.22 in principal, accrued interest in the amount of $245,733.09, late fees of $12,643.04, plus interest thereafter at the per diem rate of $1,674.79 until paid in full."[5]  (*Id.* at ¶ 13.)

### B. Facts Relevant to Default Judgment[6]

On or about April 20, 2022, Platinum entered into a Stock Purchase Agreement ("SPA") with one of Borrowers and other related entities (defined as "Sellers").[7]  (Doc. 48 at ¶ 26.)  The SPA provided that Platinum would assume all business debt and negotiate in good faith to pay or settle that debt.  (*Id.* at ¶ 29.)  Further, the SPA provided that Platinum would: indemnify Sellers and any affiliates and guarantors for any business debt; assume all of Sellers' debt and refinance it, resulting in full payment or settlement of all debts owed; and release Sellers and any of their affiliates from any guarantees.  (*Id.* at ¶¶ 30–31.)

Nueterra alleges that although it was not a party to the SPA, because it was a guarantor and affiliate of Sellers, it was an intended third-party beneficiary.  (*Id.* at ¶ 32.)  The SPA was supported

---

[4] Nueterra denies receiving this Notice of Default "at the address listed in the Guaranty or in the manner contemplated in Section 7 of the Guaranty." (Doc. 26 at ¶ 22.) Nueterra does not deny, however, that it actually received this Notice of Default.

[5] In its reply, Central Bank provides updated amounts after account sweeps and other payments were accounted for: "Principal in the amount of $7,628,344.80, Interest in the amount of $399,723.97, Late Fees in the amount of $22,125.32, and Attorney's fees and costs (through November 21, 2022) in the amount of $399,242.00 for fees and $3,937.07 for costs . . ." (Doc. 38 at 11.) Central Bank also requested post-judgment interest and additional attorney's fees incurred in collecting the debt. (*Id.*)

[6] These facts are taken from Nueterra's motion for default judgment. (Doc. 48.)

[7] The SPA defines "Sellers" as the Company and the stockholders of the Company. (*Id.* at ¶ 27.) In turn, the SPA notes that:

> The Company owns the following entities: Noble Health Corp., a Missouri company, Noble Health Service, Inc., and [SIC] Missouri company, Noble Health Management, LLC, a Missouri limited liability company, Noble Health Real Estate, LLC, a Missouri limited liability company and Noble Health Real Estate I, LLC, a Missouri limited liability company, Noble Health Real Estate II, LLC, a Missouri limited liability company (together with Company, "Noble" or "Provider").

(*Id.* at ¶ 28.) This definition includes one of Borrowers, Noble Health Real Estate II, LLC, but does not include Noble Health Audrain Inc., the other Borrower.  It is unclear why Noble Health Audrain Inc. was not included.

3

by sufficient consideration.  (*Id.* at ¶ 33.)  Nueterra provided Platinum with notice of Central Bank's claim against Nueterra.  (*Id.* at ¶ 34.)  Platinum has failed to indemnify Nueterra and hold Nueterra harmless and has failed to refinance the debt owed resulting in full payment or settlement of the debt and release of the guarantors.  (*Id.* at ¶ 35.)  Nueterra has been damaged in the sum certain amount of $8,050,194.09,[8] excluding additional interest, late fees, and attorney fees which Nueterra reserves the right to request.  (*Id.* at ¶ 47.)

Nueterra served Platinum with the third-party complaint and summons on October 12, 2022.  (*Id.* at ¶ 4.)  Platinum has not entered an appearance, filed an answer, or otherwise responded to the third-party complaint and summons.  (*Id.* at ¶ 6.)  The clerk entered default against Platinum on December 28, 2022.  (*Id.* at ¶ 9; Doc. 41.)  Nueterra now moves for default judgment.  (Doc. 48.)

**II.      Standard**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.  *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006).  The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).  The nonmovant must then bring forth specific facts showing a genuine issue for trial.  *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Conclusory allegations are not sufficient to create a dispute as to an issue of material fact.  *See*

---

[8] This number is reached by combining the outstanding principal ($7,628,344.80) with the interest ($399,723.97) and late fees ($22,125.32) as of November 22, 2022.

4

*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

Default judgment may be entered against a party who fails to appear or otherwise defend. Fed. R. Civ. P. 55. The party must first seek an entry of default from the clerk and then move for default judgment with the court. *Id.* The decision to enter default judgment is "committed to the district court's sound discretion." *Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (quoting *Dennis Garberg & Assocs. V. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997)). Because Platinum failed to answer, plead, or otherwise defend this action, it is deemed to have admitted the factual allegations of the complaint as true. *Id.* at 1125.

Before entering default judgment against Platinum, the court also has an affirmative duty to look into its jurisdiction over the parties. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986); *see also Hukill v. Okla. Native Am. Domestic Violence Coalition*, 542 F.3d 794, 797 (10th Cir. 2008) ("[A] default judgment in a civil case is void if there is no personal jurisdiction over the defendant.").

Turning to the merits, once default is entered Platinum is not entitled to defend itself on the merits and the court must determine whether Nueterra's allegations, which are taken as true, state a claim against Platinum. *See, e.g., Kalinich v. Grindlay*, No. 14-1120-SCA, 2014 WL 3740439, at *1 (D. Kan. July 30, 2014). If there is a sufficient basis for default judgment, that judgment establishes only liability. *See, e.g., Hermeris, Inc.*, 2012 WL 1091581, at *1. "Damages may be awarded only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Mathiason v. Aquinas*

*Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1275 (D. Kan. 2016) (quoting *DeMarsh v. Tornado Innovations, L.P.*, Case No. 08-2588-JWL, 2009 WL 3720180, at *2 (D. Kan. Nov. 4, 2009)).

### III.   Analysis

Both parties contend that the guaranty must be construed in accordance with Missouri law. (Doc. 19 at 5 n.1; Doc. 26 at 18 n.3.)  "When exercising diversity jurisdiction, the court must apply the forum state's choice of law rules to determine which state's substantive law applies." *Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1286 n.2 (D. Kan. 1997).  In a contract action, a Kansas court would apply an enforceable choice of law provision. *Swimwear Solution, Inc. v. Orlando Bathing Suit, LLC*, 309 F. Supp. 3d 1022, 1031 (D. Kan. 2018).  Under Kansas law, parties to a contract may agree that another state's law governs if the transaction bears a reasonable relation to that state.  *Id.*  Here, the parties have agreed that Missouri law should govern, and the transaction bears a reasonable relation to Missouri because the hospital purchased with the loan is located in Missouri.  Accordingly, the court applies Missouri substantive law.

#### A.   Motion for Summary Judgment (Doc. 18)

Central Bank argues that it is entitled to summary judgment because there is no genuine dispute of material fact.  (Doc. 19 at 6.)  Nueterra argues that factual issues exist and that Central Bank has failed to set forth sufficient admissible evidence establishing the precise amount owed. (Doc. 26 at 12–18.)  In response, Central Bank shows that it provided discovery responses to Nueterra, including detailed account statements which establish the amount still owed on the loan and support Tony Justin's affidavit which sets out the amount owed on the loan.  (Doc. 38 at 5.)

For Central Bank to recover on a contract of guaranty, it must show that: (1) Nueterra executed the guaranty; (2) that Nueterra unconditionally delivered the guaranty to Central Bank; (3) that Central Bank loaned money to the Borrowers in reliance on the guaranty; and (4) that

6

Central Bank is currently owed a sum of money by the terms of the guaranty. *Robb v. Bond Purchase, L.L.C.*, 580 S.W.3d 70, 84 (Mo. Ct. App. 2019); *see also ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.3d 371, 382 (Mo. banc 1993).

The first three elements are not in dispute. It is clear that Nueterra executed the guaranty, unconditionally delivered the guaranty to Central Bank, and that Central Bank loaned the money to Borrowers in reliance on that guaranty. The question in this case is whether Central Bank is currently owed a specific sum of money by the terms of the guaranty.

Nueterra does not dispute that money is owed to Central Bank. Most of its arguments against summary judgment revolve around discovery it wanted to conduct to confirm or disprove the amount owed. (Doc. 26 at 12–17.) Because Nueterra served its discovery requests upon Central Bank contemporaneously with filing its response, Nueterra received answers to those discovery requests shortly thereafter. (*See* Doc. 37) (certificate of service for Central Bank's discovery responses filed November 23, 2022.) And Central Bank attached some of its discovery responses and the documents produced to Nueterra to its reply.[9] (Docs. 38-1, 38-2, 38-3.) These attached documents also resolve Nueterra's other argument, that the affidavit by Central Bank's Senior Vice President and Director of Special Assets, Tony Justin, is not supported by the business records which serve as the foundation of his personal knowledge. (Doc. 26 at 18–23.)

Accordingly, there is not a genuine dispute of material fact about the specific sum of money owed to Central Bank by virtue of the guaranty.[10] The sum of money owed (excluding late fees

---

[9] The court notes that because Central Bank attached those documents as exhibits to its reply, Nueterra has not had an opportunity to respond relative to those documents. But Central Bank's reply was filed on November 25, 2022, and approximately three months later, Nueterra has not moved for leave to file a surreply. Nueterra also does not dispute the authenticity of the exhibits in its motion for default judgment.

[10] The actual amount owed has changed between the time Central Bank filed its motion for summary judgment (on August 25, 2022) and the time Central Bank filed its reply (on November 25, 2022), as the court notes in footnote 5. This is because certain account sweeps and payments were made which reduced the principal. (Doc. 38 at 2.) The interest and late fees will continue to increase over time until the principal is paid off.

and interest which continue to accrue as the principal remains outstanding) is $8,050,194.09.[11] The court finds that Central Bank is entitled to summary judgment against Nueterra on its claim for breach of guaranty.

The court will briefly address Nueterra's argument that it did not receive notice of the default "in the manner contemplated in Section 7 of the Guaranty." (Doc. 26 at 17.) Nueterra argues not that it did not receive the notice, but that it did not receive the notice at the address listed in the guaranty. (*Id.*) In response, Central Bank argues that the guaranty does not require that Nueterra receive a notice of default, both because it is an unconditional and absolute guaranty and because of the actual language in the guaranty. (Doc. 38 at 7–9.)

"It is well settled that the liability of a guarantor is to be strictly construed according to the terms agreed upon, and a guarantor is bound only by the precise words of his contract, and no stretching or extension of terms can be indulged in order to hold the guarantor liable." *U.S. Suzuki Motor Corp. v. Johnson*, 673 S.W.2d 105, 107 (Mo. Ct. App. 1984). This guaranty explicitly states that it is "irrevocable, unconditional and absolute." (Doc. 1-3 at 2.) But most importantly, the guaranty does not require that Nueterra receive a notice of default before it becomes obligated to make payment on the guaranty.

The language that comes the closest to requiring notice of default is this: "If for any reason any sums shall not be paid by Borrower promptly when due . . . Guarantor will pay the same promptly after notice thereof and/or will promptly perform and observe the same or cause the same promptly to be performed or observed . . . ." (*Id.* at 2–3.) That provision contemplates some form of notice, but it does not explicitly require notice of default be given to Nueterra. And later in the guaranty, the waiver provision explicitly states: "Notice of acceptance of this Guaranty and notice

---

[11] Nueterra admits these are the total damages in its motion for default judgment against Platinum. (Doc. 48 at ¶ 47.)

of any obligations or liabilities contracted or incurred by Borrower under any of the Loan Documents are hereby waived by Guarantor." (*Id.* at 5.) This language, strictly construed and without any stretching or extension, shows that Nueterra waived its right to receive a notice of default. And again, the court notes that Nueterra has not disputed that it actually received the notice of default – its argument is that it did not receive the notice of default at the proper address. The court finds this argument unpersuasive.

Central Bank's motion for summary judgment is granted.

### B. Motion for Default Judgment (Doc. 48)

The court will address whether it has jurisdiction over the third-party defendant, Platinum. Third-party plaintiff, Nueterra, brought its breach of contract and contractual indemnification claims against Platinum pursuant to Fed. R. Civ. P. 14.

Platinum is a Texas corporation with its principal place of business in Wylie, Texas. (Doc. 48 at ¶ 2.) Nueterra is a Kansas limited liability company. (Doc. 1 at ¶ 2; Doc. 12 at ¶ 2.) Nueterra's members are Mayhew Properties, LLC and Tasset Family, LLC. (Doc. 1 at ¶ 2; Doc. 12 at ¶ 2.) Because the members of Mayhew Properties, LLC and Tasset Family, LLC reside in both Kansas and Nevada, Nueterra is a citizen of both Kansas and Nevada. (Doc. 1 at ¶¶ 3–5; Doc. 12 at ¶¶ 3–5.) Central Bank is a citizen of Missouri. (Doc. 1 at ¶ 1.) Accordingly, there is complete diversity between all of the parties as required by 28 U.S.C. § 1332 for diversity jurisdiction. The amount in controversy is also more than $75,000. 28 U.S.C. § 1332(a).

Nueterra alleges that this court has subject matter jurisdiction under 28 U.S.C. § 1367 because the claims against Platinum are so closely related to the claims against Nueterra that they form the same case and controversy. (Doc. 48 at ¶ 12.) "A claim is part of the same case or controversy if it 'derives from a common nucleus of operative fact.'" *Price v. Wolford*, 608 F.3d

9

698, 702–03 (10th Cir. 2010) (quoting *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997)).  Here, the facts overlap substantially between the claim against Nueterra and the claims against Platinum.  The claims against Platinum depend upon the claim against Nueterra and derive from a common nucleus of operative fact.

Nueterra contends that the court has personal jurisdiction over Platinum because the long arm statute in Kansas, K.S.A. § 60-308, and the United States Constitution would permit a Kansas court to exercise personal jurisdiction.  (Doc. 48 at ¶ 14.)  Specifically, Nueterra contends that the SPA that Platinum entered into requires performance of the contract, in part, in Kansas.  (*Id.*)  "[E]ntering into an express or implied contract . . . with a resident of this state to be performed in whole or in part by either party in this state" is sufficient to subject an individual to personal jurisdiction in this state.  K.S.A. § 60-308(b)(1)(E).

Platinum did not contract with Nueterra, a Kansas resident.  Instead, Nueterra alleges it is an intended third-party beneficiary to the contract Platinum entered into with several Missouri residents.  Nueterra does not point the court to any case which shows that a party can be hauled into court by a third-party on the basis of a contract it entered into with a resident of another state.  Similarly, the court has been unable to locate any case which indicates this is sufficient contact to subject Platinum to specific personal jurisdiction.[12]  *Smith & Loveless, Inc. v. Caicos Corp.*, Case No. 04-2384-JPO, 2005 WL 1533116, at *4–5 (D. Kan. June 29, 2005) (finding personal jurisdiction over defendant who entered contract with Kansas resident to be partially performed in Kansas but declining personal jurisdiction over surety defendant who was not party to contract).

Ultimately, the court must conclude that it does not have personal jurisdiction over Platinum, and thus, Nueterra's motion for default judgment is denied.

---

[12] Nueterra alleges no facts which could be construed as alleging that this court has general personal jurisdiction over Platinum, so the court does not address the issue.

IV.     Conclusion

For the reasons stated herein, Central Bank's motion for summary judgment (Doc. 18) is GRANTED.  Central Bank is directed to file within seven days a proposed judgment, including the sum certain amount of $8,050,194.09 plus late fees and interest accrued between November 22, 2022, and the date of entry of this order.  Central Bank should also include the updated per diem rate which should be assessed between the date of this order and the date judgment is entered.

Central Bank requests post-judgment interest at the contract rate until the judgment is paid in full.  (Doc. 19 at 8.)  The federal statutory rate ordinarily applies to civil judgments unless "the parties have clearly, unambiguously, and unequivocally contract[ed] for a different post-judgment interest rate." *Mid Atl. Capital Corp. v. Bien*, 956 F.3d 1182, 1208–09 (10th Cir. 2020).  If Central Bank contends that the contract interest rate should apply to post-judgment interest, it should make its argument in its filing.

Nueterra will have seven days after Central Bank's proposed judgment is filed to file any objections to the amounts or rate proposed.  Nueterra's motion for default judgment (Doc. 48) is DENIED.

IT IS SO ORDERED this 6th day of March, 2023.

            s/ John W. Broomes
            JOHN W. BROOMES
            UNITED STATES DISTRICT JUDGE