IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CENTRAL BANK OF THE MIDWEST,

        Plaintiff,

v.                                                Case No.  22-2218-JWB

NUETERRA CAPITAL, LLC,

        Defendant.

## MEMORANDUM AND ORDER

This matter comes before the court on Nueterra Capital, LLC's second motion for default judgment.  (Doc. 71.)  Nueterra Capital, LLC ("Nueterra") moves for default judgment against Third Party Defendant Platinum Medical Management, Inc. ("Platinum").  (*Id.* at 1.)  Platinum has not appeared in the case.  For the reasons stated herein, Nueterra's motion is GRANTED.

## I.    Facts and Procedural Background

The court has set out the facts of this case in detail in its previous memorandum and order. (Doc. 60 at 1–4.)  The facts included here are those necessary to resolve the second motion for default judgment.  On or about April 20, 2022, Platinum entered into a Stock Purchase Agreement ("SPA") with Noble Health Corp. ("Noble") and other related entities (defined as "Sellers").[1]

---

[1] The SPA defines "Sellers" as the Company and the stockholders of the Company.  (Doc. 71 at ¶ 30.)  In turn, the SPA notes that:

> The Company owns the following entities: Noble Health Corp., a Missouri company, Noble Health Service, Inc., and [SIC] Missouri company, Noble Health Management, LLC, a Missouri limited liability company, Noble Health Real Estate, LLC, a Missouri limited liability company and Noble Health Real Estate I, LLC, a Missouri limited liability company, Noble Health Real Estate II, LLC, a Missouri limited liability company (together with Company, "Noble" or "Provider").

(*Id.* at ¶ 28.)  This definition includes one of Borrowers, Noble Health Real Estate II, LLC, but does not include Noble Health Audrain Inc., the other Borrower.  It is unclear why Noble Health Audrain Inc. was not included.

(Doc. 71 at ¶ 12.)  Noble is incorporated under Missouri law, but its headquarters were located in Kansas at the time Noble negotiated and entered into the SPA and for some time after.  (*Id.* at ¶¶ 14, 19.)  Nueterra's subsidiary, NC Holdings, LLC, was at one time a stockholder of Noble but Nueterra never participated in the day-to-day management of Noble's business.  (*Id.* at ¶ 25.)  Jeremy Tasset, Chief Executive Officer of Nueterra, executed the SPA in Kansas on behalf of NC Holdings, LLC.  (*Id.* at ¶ 24; *id.* at 17–18.)[2]

The SPA provided that Platinum would assume all business debt and negotiate in good faith to pay or settle that debt.  (*Id.* at ¶ 31.)  Further, the SPA provided that Platinum would: indemnify Sellers and any affiliates and guarantors for any business debt; assume all of Sellers' debt and refinance it, resulting in full payment or settlement of all debts owed; and release Sellers and any of their affiliates from any guarantees.  (*Id.* at ¶¶ 32–33.)

Nueterra alleges that although it was not a party to the SPA, because it was a guarantor and affiliate of Sellers, it was an intended third-party beneficiary.  (Doc. 17 at ¶ 21.)  The SPA was supported by sufficient consideration, including that Platinum received Noble's stock in exchange for assuming Noble's debt obligations.  (*Id.* at ¶ 22.)  Nueterra provided Platinum with notice of Central Bank's claim against Nueterra.  (*Id.* at ¶ 23.)  Platinum has failed to indemnify Nueterra and hold Nueterra harmless and has failed to refinance the debt owed resulting in full payment or settlement of the debt and release of the guarantors.  (*Id.* at ¶ 24.)  Nueterra has been damaged in the sum certain amount of $8,019,150.94, excluding additional interest, late fees, and attorney fees which Nueterra reserves the right to request.  (Doc. 71 at ¶ 48; *id.* at 15.)

---

[2] Jeremy Tasset's declaration is attached to Doc. 71 as "Exhibit A" beginning on page 17 but does not appear as an exhibit on the docket sheet.  For ease of reference, the court refers to the declaration as Doc. 71 and the appropriate page number.

Nueterra served Platinum with the third-party complaint and summons on October 12, 2022.  (*Id.* at ¶ 40.)  Platinum has not entered an appearance, filed an answer, or otherwise responded to the third-party complaint and summons.  (*Id.* at ¶¶ 42–43.)  The clerk entered default against Platinum on December 28, 2022.  (*Id.* at ¶ 45; Doc. 41.)  Nueterra moved for default judgment and the court denied that motion for lack of personal jurisdiction over Platinum.  (Doc. 60 at 10.)  Nueterra has now filed a second motion for default judgment with the court's permission, incorporating additional factual allegations to establish that the court has personal jurisdiction.  (Doc. 71.)

The court entered summary judgment against Nueterra on Central Bank's claim.  (Doc. 60.)  This established Nueterra's liability for the amount of the judgment, which has been calculated at $8,019,150.94 (excluding additional interest).  (Doc. 61; Doc. 71 at 8.)

## II.    Standard

Default judgment may be entered against a party who fails to appear or otherwise defend. Fed. R. Civ. P. 55.  The party must first seek an entry of default from the clerk and then move for default judgment with the court.  *Id.*  The decision to enter default judgment is "committed to the district court's sound discretion." *Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (quoting *Dennis Garber & Assocs. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997)).  Because Platinum failed to answer, plead, or otherwise defend this action, it is deemed to have admitted the factual allegations of the complaint as true.  *Id.* at 1125.

Before entering default judgment against Platinum, the court also has an affirmative duty to look into its jurisdiction over the parties. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986); *see also Hukill v. Okla. Native Am. Domestic Violence Coalition*, 542 F.3d 794,

3

797 (10th Cir. 2008) ("[A] default judgment in a civil case is void if there is no personal jurisdiction over the defendant.").

Turning to the merits, once default is entered Platinum is not entitled to defend itself on the merits and the court must determine whether Nueterra's allegations, which are taken as true, state a claim against Platinum. *See, e.g., Kalinich v. Grindlay*, No. 14-1120-SCA, 2014 WL 3740439, at *1 (D. Kan. July 30, 2014). If there is a sufficient basis for default judgment, that judgment establishes only liability. *See, e.g., Hermeris, Inc.*, 2012 WL 1091581, at *1. "Damages may be awarded only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1275 (D. Kan. 2016) (quoting *DeMarsh v. Tornado Innovations, L.P.*, Case No. 08-2588-JWL, 2009 WL 3720180, at *2 (D. Kan. Nov. 4, 2009)).

## III.    Analysis

### A.  Jurisdiction

The court previously found that it had diversity jurisdiction over the original action pursuant to 28 U.S.C. § 1332. (Doc. 60 at 9.) As for subject matter jurisdiction, the court found that it had jurisdiction over the claims against Platinum because they derive from a common nucleus of operative fact with the claim by Central Bank against Nueterra. (*Id.* at 9–10.) The court stands by its earlier ruling and concludes that it has subject matter jurisdiction over the claims against Platinum.

Nueterra argues that the court has specific personal jurisdiction over Platinum because of its contacts with the forum State, Kansas, related to entering and performing the SPA. (Doc. 71 at 10–12.) Specifically, Nueterra argues that Platinum entered into the SPA with a Kansas resident, Noble; purposely directed its activities at Kansas residents by negotiating and contracting with

Noble while it was located in Kansas and by continuing to run the business from Kansas for a time; and that the action here arises out of those contacts.  (*Id.*)

"To establish personal jurisdiction over a [third party] defendant, a [third party] plaintiff must satisfy both the state long-arm statute and constitutional due process."  *Mantz v. Rapid Res., Inc.*, Case No. 2:21-cv-02484-HLT-ADM, 2022 WL 17716838, at *2 (D. Kan. Sept. 14, 2022) (citing *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006)).  The Kansas long-arm statute has been interpreted liberally to allow jurisdiction to the fullest extent permitted by constitutional due process, so courts can proceed straight to the constitutional issue.  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998) (citing *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994)).

For a court to have specific personal jurisdiction over a party, the party must have purposefully directed its activities at residents of the forum State and the case must result from the injuries that arise out of or relate to those activities.  *Id.* at 1090–91 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  Here, Platinum purposefully directed its contract negotiations into Kansas, entered into a contract which was executed in Kansas, and contracted with a resident of Kansas.  The contract also would have been performed, at least in part, in Kansas when Platinum indemnified Nueterra.  The injuries that Nueterra alleges relate directly to these contacts and arise from those contacts.  Thus, the court concludes that it has specific personal jurisdiction over Platinum.

### B.  Breach of Contract Claim

To state a claim for breach of contract under Missouri law,[3] Nueterra must show "(1) the existence and terms of a contract; (2) that [Noble] performed or tendered performance pursuant to

---

[3] The parties agree, and the court has previously concluded, that Missouri law governs the substantive claims at issue.

the contract; (3) breach of the contract by [Platinum]; and (4) damages suffered by [Nueterra]." *Moore v. Armed Forces Bank, N.A.*, 534 S.W.3d 323, 327 (Mo. Ct. App. 2017) (quoting *Keveny v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010)).   Nueterra has alleged facts related to the existence and terms of the contract, the alleged breach by Platinum, and the damages suffered by Nueterra.  (Doc. 17 at 4–6.)  The other party to the contract with Platinum, Noble, performed its obligations under the contract in transferring ownership of the company's stock.  (*Id.* at ¶ 22.)

Nueterra has also acknowledged that it is not a party to the contract with Platinum.  (*Id.* at ¶ 21.)  Nueterra alleges that it is an intended third-party beneficiary to the SPA because it is an affiliate and guarantor of Noble's debt. (*Id.*)  This is a legal conclusion, not a factual allegation, and thus the court must examine the facts alleged to determine whether Nueterra is truly a third-party beneficiary that can enforce the contract.

"A third-party beneficiary can enforce the terms of the contract if the third party is a party for whose primary benefit the other parties contracted." *JTL Consulting, L.L.C. v. Shanahan*, 190 S.W.3d 389, 399 (Mo. Ct. App. 2006).  "A third-party beneficiary can sue to enforce the contract if the contract terms clearly express an intent to benefit either that party or an identifiable class of which the party is a member." *RLI Ins. Co. v. S. Union Co.*, 341 S.W.3d 821, 830 (Mo. Ct. App. 2011) (quoting *Haren & Laughlin Const. Co. v. Jayhawk Fire Sprinkler Co.*, 330 S.W.3d 596, 600 n.1 (Mo. Ct. App. 2011)) (internal quotations omitted).

"Third party beneficiary status depends not so much on a desire or purpose to confer a benefit on the third person, but rather on an intent that the promisor assume a *direct obligation* to him." *Lexington Ins. Co. v. Integrity Land Title Co.*, 852 F. Supp. 2d 1119, 1138 (E.D. Mo. 2012) (quoting *McKenzie v. Columbian Nat'l Title Ins. Co.*, 931 S.W.2d 843, 845 (Mo. Ct. App. 1996) (emphasis in original)).

Because Platinum has failed to appear and default has been entered, it has lost the right to contest the allegations against it. Nueterra alleges that Platinum agreed to assume Noble's debt obligations and indemnify third-party guarantors. Platinum also agreed to refinance the debt, resulting in payment or settlement of the debt in full and release of any affiliates from guarantees related to the debt. Those promises obligated Platinum to the guarantors of the debt, a class of individuals or organizations which includes Nueterra. Thus, in entering the contract, Platinum obligated itself to Nueterra. Accepting Nueterra's factual allegations as true, Platinum has breached the contract by failing to refinance the debt and failing to indemnify Nueterra. The court finds it is appropriate to enter default judgment against Platinum on the breach of contract claim.

### C.  Indemnification Claim

To state a claim for indemnification, Nueterra must show that Platinum was required to indemnify Nueterra, that it failed to do so, and that Nueterra suffered a judgment, loss, or liability because of Platinum's failure to indemnify. *See Am. Nat'l Prop. & Cas. Co. v. Ensz & Jester, P.C.*, 358 S.W.3d 75, 81 (Mo. Ct. App. 2011). As explained above, Platinum is contractually obligated to indemnify Nueterra and has not done so. Nueterra has now suffered a judgment, and Platinum must indemnify Nueterra for that judgment.

### D.  Damages

The court may only award damages on default judgment without a hearing if the amount of damages is if the amount of damages is demonstrated "by detailed affidavits establishing the necessary facts." *Hermeris, Inc. v. McBrien*, Case No. 10-2483-JAR, 2012 WL 1091581, at *1 (D. Kan. Mar. 30, 2012) (quoting *DeMarsh v. Tornado Innovations, L.P.*, Case No. 08-2588, 2009 WL 3720180, at *2 (D. Kan. Nov. 4, 2009)). In this case, the damages were supported by affidavit and detailed account records which were submitted in support of the motion for summary

judgment.  (*See* Doc. 60 at 6–8.)  The judgment against Nueterra is in the amount of $8,113,569.14 with post-judgment interest at a rate of $1,627.90 per day until the judgment is paid in full. Accordingly, this is the amount of the damages Nueterra has sustained and is the amount of the judgment against Platinum.

**IV.     Conclusion**

For the reasons stated herein, Nueterra's second motion for default judgment (Doc. 71) is GRANTED.   The clerk is directed to enter judgment against Platinum in the amount of $8,113,569.14 with post-judgment interest at a rate of $1,627.90 per day until the judgment is paid in full.  To the extent any party seeks its attorney fees and costs, that party shall file an appropriate motion after entry of judgment.

IT IS SO ORDERED this 3rd day of May, 2023.


_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE